**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT**

**CIVIL ACTION NO. 11-61-JBC**

**ANGELA HOOVER,                                                                 PLAINTIFF,**

**V.                           MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                DEFENDANT.**

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Angela Hoover's appeal of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The court will grant the Commissioner's motion, R. 11, and deny Hoover's motion, R. 10, because substantial evidence supports the administrative decision.

At the date of her applications for DIB and SSI, Hoover was 45 years old. She had an eighth-grade education and had work experience as a deli cashier, deli cutter and slicer, hotel clerk, and customer service clerk. AR 33-36, 50-51. She alleged disability beginning August 1, 2008, due to fibromyalgia, arthritis, post-traumatic stress disorder, and fatigue. AR 167, 226. She filed her claims for DIB and SSI on March 17, 2009, and, after initial and reconsideration denials, requested and received a hearing before

1

an Administrative Law Judge ("ALJ"). On April 14, 2011, ALJ Gloria B. York determined that Hoover was not disabled under Section 1614(a)(3)(A) of the Social Security Act. AR 23. Under the traditional five-step analysis, s*ee Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520, the ALJ determined that Hoover had not engaged in substantial gainful activity since August 1, 2008, the alleged onset date, AR 15; that she had "severe" impairments consisting of fibromyalgia and a dysthymic disorder, *Id.*; that her impairments, whether considered singly or in combination, did not meet or equal any of the Commissioner's Listings of Impairment, AR 16; that she retained the residual functional capacity ("RFC") to perform a limited range of light work, AR 17; and that while she was unable to perform any past relevant work based on her RFC, jobs existed in significant numbers in the national economy that she could perform. AR 20-22. The ALJ denied her claims for DIB and SSI on April 14, 2011. AR 23. The Appeals Council declined to review, AR 1-3, and this action followed.

Hoover challenges the ALJ's decision on the following grounds: (1) the ALJ failed to properly evaluate the medical opinion evidence and erred in her analysis of fibromyalgia; (2) the ALJ erred in her analysis of the claimant's mental condition; (3) the ALJ erred in not giving great weight to Hoover's treating physician of 18 years; and (4) the ALJ erred in accepting

erroneous testimony of the Vocational Expert ("VE"), who was asked to provide examples of unskilled work in the light range.

The ALJ properly evaluated Hoover's fibromyalgia. Hoover does not specifically describe any way in which the ALJ's determination was inadequate in this regard. Rather, she cites general principles regarding the diagnosis of fibromyalgia as set out in *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988). Fibromyalgia patients often present no objectively alarming signs, and manifest normal muscle strength and neurological reactions and have a full range of motion. *Id.* The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* Hoover then recites the findings of rheumatologist Christopher Colglazier from 2006, in which he noted that Hoover had 18 out of 18 possible tender points in a classic fibromyalgia distribution, and diagnosed "FM, currently active." AR 317.

The ALJ noted the diagnosis of fibromyalgia in 2006 and that Hoover had received medication for the condition, AR 19, and that Colglazier also recommended water therapy, AR 320. But there was no evidence that Hoover had complied. The ALJ further noted that in a June, 2009 consultative examination, Samuel Deel, D.O., found only five tender points and concluded that she did not meet the criteria for a diagnosis of fibromyalgia on that day. AR 19, 497-98. Deel surmised that Hoover's

pharmacological treatment must be working. AR 498. Deel stated that he could not foresee the illness "interfering grossly" with Hoover's ability to work, based on his examination. Id. While fibromyalgia can result in disability, the mere diagnosis of the condition is not sufficient to establish an entitlement to benefits. *Vance v. Comm'r of Social Security*, 260 Fed.Appx. 801, 806 (6th Cir. 2008). Colglazier never provided any functional restrictions, and his examinations took place more than two years before the alleged onset date.

Hoover recites a series of diagnoses, including a depressive disorder, borderline personality disorder, post-traumatic stress disorder, and dysthymic disorder, given at different times from treating mental health sources at NorthKey Community Care, along with a Global Assessment of Functioning ("GAF") score of 52. AR 335, 452, 465, 665. She also recites a diagnosis of dysthymic disorder and a GAF of 55 from Thomas Miller, a consultative psychological examiner who recommended that Hoover might function best in a slower-paced work setting where she was able to sit or stand alternately. AR 476. A GAF score between 51 and 59 represents a moderate impairment. *Diagnostic and Statistical Manual of Mental Disorders* (4th Ed.--Text Revision), p. 34. Other than reciting these diagnoses and GAF scores, Hoover does not flesh out any argument explaining how they are inconsistent with the ALJ's restriction to low-stress work. The ALJ noted Miller's conclusion that Hoover had an adequate ability to remember and

carry out simple one- and two-step instructions and to interact, a "fairly adequate" ability to concentrate, and a "fair" ability to adapt or respond to the pressures found in some types of day-to-day work settings. AR 476. Nothing in Hoover's argument or in the evidence is inconsistent with her ability to perform low-stress work.

Hoover appears to argue that the ALJ did not provide a sufficient rationale for rejecting the restrictions recommended by her treating family physician, Steven Sterneberg. She recites the holding in *Wilson v Com'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004), that "if the opinion of a treating source is not accorded controlling weight an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Id.* at 544. Sterneberg completed a physical medical assessment form limiting Hoover to lifting no more than five pounds, standing and walking one hour in an eight-hour day (no more than 15 minutes without interruption), sitting two hours in an eight-hour day (no more than 15 minutes without interruption), and describing numerous postural and manipulative limitations. AR 581-84. He opined that she was not capable of sustaining work activity for eight hours a day, five days a week, on a sustained basis. AR 584. The form asked Sterneberg to

describe medical findings in support of his assessment, but he primarily listed symptoms such as pain and stiffness. The only specific medical finding was decreased grip strength. The ALJ found that Sterneberg's opinion of disability was not well supported by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with the weight of the evidence. AR 20, n. 2. Although the ALJ did not provide as much detail for her conclusion as she might have, she did mention Dr. Deel's 2009 determination that Hoover's grip strength was normal and that she had adequate fine-motor movements, dexterity, and ability to grasp objects. AR 19, 497. Thus, the ALJ satisfied the goal of the regulations by "indirectly attacking" the treating physician opinion. *See Nelson v. Comm'r of Social Security*, 195 Fed.Appx. 462, 471-2 (6th Cir. 2006).

Finally, Hoover argues that the jobs of maid/housekeeper, mail clerk, and stock clerk/order filler, described by the VE in response to the ALJ's hypothetical question, were not unskilled, as the VE testified. The Commissioner's regulations impose a duty on the ALJ to ask the VE to provide a reasonable explanation for any conflict between the VE's testimony and the *Dictionary of Occupational Titles* (DOT). See SSR 00-4p at *4*. The ALJ did ask the VE to identify any conflicts with the DOT. AR 52. The regulations do not require a further investigation of the VE's testimony. *Lindsley v. Comm'r of Social Security*, 560 F.3d 601, 606 (6th Cir. 2009). Moreover, even if there was a conflict, the ALJ was entitled to

accept the VE's testimony over the job descriptions in the DOT.  *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995).

The ALJ having properly applied the relevant legal standards and her decision being supported by substantial evidence,

**IT IS ORDERED** that Hoover's motion for summary judgment, R. 10, is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 11, is **GRANTED**.

The court will enter a separate judgment.

Signed on June 22, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

7